UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 12-21758-CIV-MORENO

WESTCHESTER FIRE INSURANCE CO.,

    Plaintiff,

vs.

MID-CONTINENT CASUALTY CO.,

    Defendant.
_____/

## ORDER DENYING MOTION FOR SUMMARY JUDGMENT

THIS CAUSE came before the Court upon Plaintiff Westchester Fire Insurance Co.'s Motion for Summary Judgment **(D.E. No. 18)**, filed on **November 8, 2012**. Plaintiff Westchester filed this motion for summary judgment, contending that Defendant Mid-Continent Casualty Co. violated its duty of good faith by failing to reach a settlement in an underlying lawsuit. For the following reasons, the Court finds that a genuine issue of material fact exists regarding the reasonableness of any opportunity Mid-Continent had to settle in the underlying action. Consequently, the Court denies Westchester's motion for summary judgment.

### I. FACTUAL BACKGROUND

On May 19, 2003, Jesus Pillado suffered multiple injuries while operating a concrete mixer truck manufactured and sold by Continental Manufacturing, Inc. According to Pillado, the truck's air hopper assembly dropped on him when he attempted to lower it after the assembly had become wedged in the upright position. As a result of the accident, Pillado suffered several injuries including brain damage and fractured vertebrae. Pillado subsequently filed a products

liability suit against Continental on January 12, 2006 in Miami-Dade County, Florida.

During this time, Continental had a primary insurance policy of $1 million issued by Defendant Mid-Continent. In addition, Continental possessed an umbrella insurance policy from Plaintiff Westchester with a $5 million limit. Westchester's umbrella policy stood in excess to Mid-Continent's primary policy, covering certain damages and occurrences.

In the ensuing litigation, Mid-Continent provided a defense for Continental. Prior to trial, Pillado presented an economic loss exceeding $1 million. Mid-Continent's claims adjuster, Alycia Stevens, was aware at this time that a verdict in favor of Pillado "could" exceed the company's policy limit due to the nature of the injuries and economic damages alleged. *See* Def.'s Statement of Undisputed Material Facts ¶ 18.

Accordingly, on four occasions in the months leading up to trial, Westchester requested Mid-Continent to settle with Pillado all claims within Mid-Continent's $1 million policy limit. Westchester even offered to contribute an amount from its layer of coverage to the settlement if Mid-Continent made a $1 million offer. Nevertheless, Mid-Continent never offered Pillado more than $150,000 to settle his claim. Instead, Mid-Continent chose to rely on the advice of its own counsel that the case was "defensible" with the potential of liability "doubtful and disputed." Great American Insurance Companies Suit Approaching Trial Report, at 23. In fact, defense counsel concluded:

> It is our belief that there is a 70% chance of a defense verdict in this matter and on the 3 times out of 10 that the plaintiff may obtain a verdict, we anticipate a substantial amount of comparative negligence will be assessed against the plaintiff.
> Considering plaintiff's counsels [sic] anticipated position of liability and damages, we believe the settlement range of this claim is $150,000–$350,000 (in light of the settlement of the worker's compensation lien), and, likewise with

> respect to the settlement of the worker's compensation lien, the net verdict
> exposure on this claim is in the range of zero–$650,000.

*Id.* at 24–25. Defense counsel also conducted a mock trial that resulted in ten of seventeen jurors finding no liability on the part of Mid-Continent. Ultimately, counsel considered this case to be, "[f]or the most part, . . . an all or nothing" affair with a result of either zero or full liability depending upon whom the jury believed. In light of these findings, Mid-Continent formulated its $150,000 settlement offer.

After trial had commenced, Pillado made an attempt to settle with Mid-Continent for $1 million. Correspondingly, Westchester reiterated its demands for Mid-Continent to settle at several points during the trial. At the end of the trial's first week, Judge Michael Genden advised the parties that he believed the case was "a 50-50 split" on liability, but if the jury believed Pillado, it "could result in a multi-million dollar verdict." Post-Trial Report, at 2–3. Additionally, a juror who was excused during the course of the trial indicated to defense counsel that she had been prepared to find in favor of Pillado. Mid-Continent nonetheless refused to settle once again, standing by its $150,000 figure. Consequently, the case proceeded to verdict with the jury finding in favor of Pillado with no comparative fault. The court entered a final judgment against Continental on September 8, 2010 for $1,990,173, $285,000 of which constituted costs awarded to Pillado's attorneys. In the end, the judgment resulted in an excess exposure over the primary policy against Continental and Westchester in the amount of $705,173.

Westchester has now brought this suit against Mid-Continent alleging that Mid-Continent acted in bad faith by refusing to settle Pillado's claim. Westchester filed this motion for

summary judgment requesting this Court to find as a matter of law that Mid-Continent failed to exercise its duty of good faith to settle with Pillado when presented with a reasonable opportunity to do so.

## II. LEGAL STANDARD

A court shall grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Consequently, the movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## III. DISCUSSION

In the present motion, Westchester argues that it is entitled to summary judgment that Mid-Continent violated its duty of good faith in failing to settle the case with Pillado. In particular, it maintains that there is no genuine issue of material fact that Mid-Continent had a reasonable opportunity to settle the case and should have done so as it should have known that the trial would likely result in an excess verdict in favor of Pillado.

Under Florida law, an insurer has a duty when handling claims against its insured to "use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business." *Macola v. Gov't Emps. Ins. Co.*, 953 So. 2d 451, 454–55 (Fla. 2006) (quoting *Boston Old Colony Ins. Co. v. Gutierrez*, 386 So. 2d 783, 785 (Fla. 1980)). The Supreme Court of Florida has further elaborated on this duty, noting that

>  when the insured has surrendered to the insurer all control over the handling of the claim, including all decisions with regard to litigation and settlement, then the insurer must assume a duty to exercise such control and make such decisions in good faith and with due regard for the interests of the insured. This good faith duty obligates the insurer to advise the insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps he might take to avoid same. The insurer must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so.

*Gutierrez*, 386 So. 2d at 785.

Florida also recognizes a third-party right to maintain an action against the insurer under the common law to recover the amount of an excess judgment based on the insurer's breach of its good faith obligation. *Macola*, 953 So. 2d at 455. The essence of this type of action is "to remedy a situation in which an insured is exposed to an excess judgment because of the insurer's failure to properly or promptly defend the claim." *Cunningham v. Standard Gaur. Ins. Co.*, 630 So. 2d 179, 181 (Fla. 1994). It is therefore well-settled that "an excess insurer is entitled to maintain a common law bad faith action against a primary insurer." *Vigilant Ins. Co. v. Cont'l Cas. Co.*, 33 So. 3d 734, 737 (Fla. Dist. Ct. App. 2010).

"[T]he gravamen of what constitutes bad faith is whether under all the circumstances an insurer failed to settle a claim against an insured when it had a reasonable opportunity to do so." *Contreras v. U.S. Sec. Ins. Co.*, 927 So. 2d 16, 20 (Fla. Dist. Ct. App. 2006). Accordingly, Florida courts have "generally reserve[d] the question of bad faith for the jury." *Berges v. Infinity Ins. Co.*, 896 So. 2d 665, 672 (Fla. 2004); *see also Gutierrez*, 386 So. 2d at 785 ("The question of failure to act in good faith with due regard for the interests of the insured is for the jury.").

Westchester now argues that Mid-Continent's refusal to settle with Pillado constituted bad faith as Mid-Continent had a reasonable opportunity to reach a settlement knowing that an excess verdict was a possibility. Specifically, Westchester points to Mid-Continent's awareness that Pillado's claim involved "catastrophic" injuries. Indeed, defense counsel admitted that this was, for the most part, an "all or nothing" case. Additionally, Westchester stresses the fact that a juror who was dismissed during the trial indicated her inclination to find for Pillado, as well as the presiding judge's statement to the parties that the case could result in a multi-million dollar verdict if the jury believed Pillado. Under these circumstances, Westchester notes that Mid-Continent never offered more than $150,000 despite its own counsel's recommendation of a settlement range up to $350,000, that Westchester repeatedly requested a settlement and even made an offer to contribute, and that Pillado offered to settle within Mid-Continent's $1 million policy limit during trial.[1] Finally, Westchester contends that Pillado was willing to accept a settlement offer for less than the $1 million policy limit. Westchester therefore argues that Mid-Continent's behavior constituted bad faith.

In response, Mid-Continent asserts that, despite the possibility of an excess verdict, the available evidence prior to trial indicated both that the case was defensible and that an adverse result was not a probability. Mid-Continent specifically relies on the advice provided by its counsel that there was a 70% chance of a verdict in its favor in the underlying action with the expectation of substantial comparative negligence in the event that the jury found for Pillado. Furthermore, Mid-Continent highlights the mock trial that defense counsel conducted wherein

---

[1] Though disputed by Mid-Continent, Westchester also claims that Pillado made repeated efforts to settle with Mid-Continent for $1 million prior to trial.

ten out of seventeen jurors found no liability on the part of Mid-Continent. It thus emphasizes that, having taken this legal advice into consideration, it did in fact make a reasonable effort to settle the case by making the $150,000 offer within the recommended range. Though it was prepared to offer a higher amount within the settlement range, Mid-Continent adamantly denies that Pillado ever demonstrated a willingness to settle his claim for less than $1 million, much less that he would have accepted the $350,000 at the high end of the settlement range. Based on these circumstances, Mid-Continent maintains that there is a genuine issue of material fact as to whether it fulfilled its duty of good faith.

Because Westchester has failed to demonstrate the absence of a genuine issue of material fact regarding whether Mid-Continent violated its duty of good faith, the Court denies the motion for summary judgment. From the outset, the Florida Supreme Court has noted that the issue of bad faith is "generally reserve[d] . . . for the jury." *See Berges*, 896 So. 2d at 672. Though courts have at times resolved the matter at the summary judgment stage, the case law offered by Westchester does not suggest that a factually disputed situation such as the present one constitutes bad faith.

Indeed, as the bad faith analysis looks at all the relevant circumstances to determine the reasonableness of the opportunity to settle, *see Contreras*, 927 So. 2d at 20, the facts of this case prohibit the Court at this stage from finding that Mid-Continent acted in bad faith. Though Mid-Continent knew that a multi-million dollar verdict for Pillado was a *possibility*, there was no definitive evidence that such a result was likely. The statements from Mid-Continent's counsel as well as the trial judge acknowledged only a potential for an excess verdict in the event that the jury believed Pillado. At the same time, defense counsel advised Mid-Continent that the case

was "defensible" with a "70% chance of a defense verdict." Great American Insurance Companies Suit Approaching Trial Report, at 23, 24. Additionally, counsel's mock trial resulted in the majority of jurors finding for Mid-Continent. As a result, counsel recommended a settlement range of $150,000 to $350,000 to which Mid-Continent adhered, though on the low end. As courts have acknowledged, "[a]n insurance company's reliance on advice of counsel is a factor to be considered in bad faith cases." *Kearney v. Auto-Owners Ins. Co.*, No. 8:06-cv-595-T-24TGW, 2009 U.S. Dist. LEXIS 108918, at *13 (M.D. Fla. Nov. 5, 2009) (citing *Cotton States Mut. Ins. Co. v. Trevethan*, 390 So. 2d 724, 728 (Fla. Dist. Ct. App. 1980)). Thus, given this legal advice and the results of the pre-trial research, there remains a genuine dispute over the reasonableness of the opportunity to settle presented in this case, especially since the parties contest whether Pillado would have even considered an offer of less than $1 million. Though Mid-Continent may have in fact acted in bad faith in opting not to settle with Pillado, that is a matter for the jury to decide in light of the circumstances.

## IV. CONCLUSION

For the above reasons, it is

**ADJUDGED** that Westchester's Motion for Summary Judgment **(D.E. No. 18)**, filed on **November 8, 2012**, is DENIED.

DONE AND ORDERED in Chambers at Miami, Florida, this 25 day of January, 2013.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:
Counsel of Record